**UNITED STATES ex rel. Edward SUAREZ, Appellant,**

**v.**

**Hon. Harold W. FOLLETTE (successor to Hon. Edward M. Fay), Warden of Green Haven Prison, Stormville, New York, Appellee.**

**No. 263, Docket 29822.**

United States Court of Appeals Second Circuit.

Argued Dec. 16, 1966.

Decided Jan. 10, 1967.

Harrison J. Goldin, New York City, for appellant.

Barry Mahoney, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for appellee.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

PER CURIAM:

Edward Suarez, convicted by a New York jury of possession of burglary tools (New York Penal Law, McKinney's Consol.Laws, c. 40, § 408), possession of nar-

cotics (New York Penal Law, § 1751), and bribery of a police officer (New York Penal Law, § 378), appeals from an order of the District Court denying, without a hearing, his petition for a writ of habeas corpus.

On the evening of September 6, 1961, two detectives of the New York City Police Department, and an agent of the Federal Narcotics Bureau went to appellant's room at the Gorham Hotel in Manhattan. After knocking on the door and receiving no response, the officers went to a stairwell landing and partially unscrewed the fuse that controlled the electricity to Suarez's room. They then proceeded to the lobby of the hotel to await appellant's return.

Shortly after midnight when the three officers learned that Suarez had come in, they returned to the stairwell landing only to observe that during their absence the fuse had been retightened. Shortly thereafter, they heard footsteps in the hallway, and opened the stairwell door in time to observe Suarez. When he saw the officers, Suarez dropped four metal objects to the floor, which were recognized by the officers as lockpicks used by burglars.

The officers confronted Suarez and promptly identified themselves as police. After escorting Suarez to his room, they searched it, albeit without a search warrant. Nothing, however, was seized. But in a garbage can located in another stairwell on the same floor, one of the detectives found five glassine envelopes containing a whitish powder. Suarez, when asked about these, first denied that the envelopes were his, but subsequently offered the agents $2,500 to "forget" the arrest and to leave the envelope with him, which he acknowledged contained cocaine that he obtained for $400 an ounce and intended to sell for $500. Suarez was then placed under arrest. At the police station he admitted that the objects dropped in the hallway were indeed lockpicks and belonged to him.

■ Suarez argues that when the officers loosened the fuse to his room, thereby cutting off the flow of electricity, they had engaged in an illegal search; therefore, he says, the statements and other evidence that resulted from this invasion were inadmissible at the trial. Cf. Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). We need not decide in this case whether tampering with the fuse constituted a violation of the fourth amendment. The Supreme Court has commented that the question to be asked is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), quoted with approval in Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed. 374 (December 12, 1966).

■ It is clear from the undisputed facts in the present case that no evidence was obtained as the result of any trespass. The fuse to appellant's room had been readjusted before the officers returned to the stairwell. This would indicate that even if a "trespass" had occurred at the time the fuse was loosened, the "trespass" had terminated before the officers resumed their post. Moreover, there is no evidence in this record that the fuse tampering impelled Suarez to leave his room with the burglar tools. His detection in the hallway, the subsequent discovery of the cocaine, and the attempt at bribery, appear totally unrelated to the action of the officers in cutting off the room's supply of electricity.

■ Suarez also contends that the search of his room was illegal because it was not reasonably incident to the arrest in the hallway and, therefore, the statements and other evidence procured in the room were inadmissible. We need not determine whether the search of the room without a warrant was permissible under the fourth amendment for, here too, we are unable to conclude that "the evidence to which instant objection is made has been come at by exploitation of that [alleged] illegality." Nothing was seized

during the search of appellant's room. The lockpicks were recovered in the hallway, and the five envelopes containing cocaine were discovered in a stairwell. Suarez's admissions and his attempt to bribe the officers occurred *after* the unsuccessful search had been completed and resulted from his voluntary efforts to escape a lawful arrest.[1]

Affirmed.

---

1. While this appeal was pending, appellant submitted additional papers requesting various hearings and the suppression of all evidence obtained by the police officers. We have treated the papers as a supplemental brief on this appeal, and upon review of these additional contentions we find them to be wholly without merit.